FRANCIS CRAPO, PLAINTIFF IN ERROR, v. THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANT IN ERROR.

*Prisoner testifying in his own behalf—impeachment of character of—what evidence inadmissible — Evidence as to theft.*

Where a person, charged with crime, offers himself as a witness in his own behalf, he stands on the same footing as any other witness, and his character can only be impeached by evidence similar to that which would be required to impeach the character of any other witness.

On the cross-examination of a person charged with burglary, he was asked, and, against his counsel's objection and exception, compelled to answer the question, "were you also in 1869, along in February or March, arrested on a charge of bigamy?" *Held*, that this was error.

What evidence admissible on behalf of a person accused of theft to explain the fact of his having upon his person property, apparently a portion of that stolen.

WRIT OF ERROR to the Court of Sessions in and for the county of Jefferson, to review the conviction and sentence of the plaintiff

in error for burglary and larceny, after a previous conviction for the same felony.

*Bradley Winslow,* for the plaintiff in error.

*Watson M. Rogers,* for the defendants in error. There was no error in the ruling of the court permitting the question to the prisoner whether he had been arrested on a charge of bigamy. (*Turnpike Co.* v. *Loomis,* 32 N. Y., 127; *La Beau* v. *The People,* 34 N. Y., 223; *Brandon* v. *The People,* 42 N. Y., 265; 58 N. Y., 659; *Main* v. *The People,* 9 Hun, 113.)

Talcott, P. J.:

The writ of error in this case brings before us the record of the conviction of the plaintiff of the crime of burglary and larceny, after a previous conviction for felony. The conviction was before the General Sessions of Jefferson county. The burglary was the breaking and entering the grain house of one Mary Petit, and there stealing seven bushels of wheat. The prosecution relied for the conviction of Crapo upon circumstantial evidence, with the exception of an implied confession, which was denied by Crapo when on the stand as a witness.

The most important of these circumstances was the finding of some wheat in the pantaloons pocket of Crapo about the time when the wheat in question was probably stolen. The wheat was found by a police officer, who arrested and searched Crapo on suspicion that he was concerned in the commission of another offense; and in the course of the search, found in his pocket the small quantity of wheat answering the general descriptions of the wheat which was stolen from Mrs. Petit's granary. The plaintiff in error, on being inquired of by the police officer what he was doing with the wheat, Crapo said it was a sample "fetched up to sell by;" and he stated at the same time that he had sold some wheat to Shead and Graves, millers, at Watertown, something over five bushels, and had got between five and six dollars for it. The prosecution also proved by Shead, one of the firm of Shead and Graves, that sometime (about the time when the wheat was so found in Crapo's pocket), he had purchased of some man not

identifying Crapo as the person, a small quantity of wheat at one dollar a bushel, between five and six bushels.

On the examination of the mother of the plaintiff in error, who was called as a witness in his behalf, she was asked by the prisoner's counsel the following question : "Did you know of your son going to Dexter about that time, and selling some wheat there ?" which question was objected to by the district attorney, the objection sustained by the court, and the prisoner's counsel excepted.

The prisoner offered himself as a witness in his own behalf, and referring to the time when he was searched by the police officer, he said : "I did not handle any wheat on that day at all ; a few days before then I went to Dexter with six bushels." The district attorney then moved that the evidence about going to Dexter with the six bushels be stricken out. The motion was granted by the court, and the prisoner's counsel excepted. The prisoner's counsel also made a formal offer to prove, by the prisoner, that about that time he took some wheat to Dexter, and had it ground and brought home ; which offer of evidence was objected to by the district attorney. The court sustained the objection, and the counsel for the prisoner excepted.

The prisoner, on his examination, denied that he told the police officer that he had been to Shead and Graves to sell wheat, or that he told the police officer anything about the grain at all.

We think the court erred in rejecting the evidence offered on this subject, and in striking out the evidence given by the defendant. The finding of wheat on the person of the defendant, at about the time of the burglary, was relied upon as an important circumstance tending to show the prisoner's guilt.

It was important for him to show, if he could, how a small quantity of wheat might have been upon his person when searched by the police officer, consistently with his innocence of the offense with which he was charged. Though the court may have disbelieved his story, and believed that of the policeman, yet it was a question to be decided by the jury, and not by the court. The testimony should have been admitted, and the jury left to determine its value. The district attorney also asked the prisoner, on his cross-examination : "Were you, also, in 1869, along in Feb-

ruary or March, arrested on a charge of bigamy?" To this question the prisoner's counsel objected. The objection was overruled, and the prisoner's counsel excepted. We cannot conceive how anybody could suppose this question could be admissible. The question was asked, doubtless, with a view to create in the minds of the jury a prejudice against the prisoner. It could not have had the effect of impeaching the prisoner's character, either generally or for truth and veracity. If the fact that a man has been charged with an offense involving moral turpitude, is to be admitted as evidence to impeach his character in any respect, it will not only open the door to a multitude of collateral issues, but no person would be safe from the effect of the prejudice created by the mere fact of the charge. (*Jackson* v. *Osborn*, 2 Wend., 555 ; *People* v. *Gay*, 7 N. Y., 378.)

In *Jackson* v. *Osborn* (*supra*), it was held that even indictments found for forgery and perjury were inadmissible to impeach a witness without proof of a conviction. In the case of *Brandon* v. *The People*, (42 N. Y., 265), where the admission of a similar question was sustained, as we understand the opinion, it was placed wholly upon the ground that the only objection made to it was upon the ground that the prisoner had not placed her character in issue, wholly ignoring the rule that the prisoner, having offered herself as a witness, was subject to the same rules in regard to impeachment of her character applicable to other witnesses. The idea that a person charged with a crime, when he offers himself as a witness in his own behalf, is to be prepared to show himself guiltless, not only of the offense in question, but of all others which may have at any time been charged against him, however prevalent, is erroneous. He stands, in such a case, on the same footing as other witnesses, and his character can only be impeached by similar evidence to that which is required to impeach the character of any other witness. For the errors above specified, we think the judgment must be reversed. Conviction and judgment reversed.

Present—TALCOTT, P. J., SMITH and HARDIN, JJ.

Judgment and conviction reversed, and proceedings remitted to General Sessions of Jefferson county, with directions for a new trial.